UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**GERARD OLBEK and**
**ASHLEY ROGERS,**

**Plaintiffs,**

v.

**CITY OF WILDWOOD,**
**FLORIDA,**

**Defendant.**

_____/

(Jury Demand)

Case No.: 5:19-cv-138-OC-30PRL

## AMENDED COMPLAINT

The Plaintiffs, Gerard Olbek and Ashley Rogers, by and through undersigned counsel, sue the City of Wildwood and would further show:

### Count I

### Violation of Rights Under the First Amendment

1. This action is filed pursuant to 42 U.S.C. 1983 to redress the deprivation under color of state law of the plaintiffs' first amendment right of free speech. This court has jurisdiction over this action pursuant to 28 U.S.C. 1331.

2. Olbek is a resident of Homosassa, Florida. Rogers is a resident of Citrus County.

3. The defendant, City of Wildwood ("City"), is a Florida municipality within Sumter, County, Florida, and an "agency" within the meaning of §112.3187 (3) (a).

4. Jason McHugh is the City Manager of Wildwood, and a chief executive officer, within the meaning of §447.203 (9), Florida Statutes. Pursuant to Section 3-18 of the ordinances of the City of Wildwood, the city commission and its members direct the City's administrative service solely through the city manager and neither the city

1

commission nor any member thereof shall give orders to the subordinates of the city manager, either publicly or privately.

5. Pursuant to Section 4-2, the city commission may hire and/or appoint only the chief of police, the fire chief and members of various boards and advisory boards set up by ordinance.

6. Pursuant to Section 4-3, the city manager shall have the power to suspend or discharge any officer, employee or head of department whom he can appoint without the city commission's approval. McHugh was the decision-maker and final policy maker with regard to the termination of the plaintiffs.

7. All events pertinent to this complaint occurred in Sumter County, Florida.

8. The City employed Olbek as a law enforcement officer from September 2000 until December 10, 2018, when he was constructively discharged. During his career, he rose from the rank of police officer to Deputy Chief of Police.

9. The City employed Ashley Rogers as a law enforcement officer from 2000 to 2004, and again from 2005 until December 10, 2018, when he was also constructively discharged. Rogers was a captain at the time of his constructive discharge.

10. The City's police department is located in a building constructed in the 1950s, which at one time served as a fallout shelter. During recent decades officers have cleaned out mold they have observed in various places in the building. During this same time period, employees suffered constant illness and respiratory issues.

11. On or about October 22, 2018, the police station caught on fire, which forced the police department to relocate its operations to a different facility. On a walk-through of the building with the City Manager, Jason McHugh, Plaintiff advised McHugh

that the City needed to test employees for exposure to mold and asbestos. McHugh told Olbek not to talk about the issue and not to ever use the "M" word.

12. Olbek waited two weeks to see if the City would address the issue of employee health screenings. On November 13, 2018, Olbek with Rogers, sent the following memorandum to Melissa Tuck, the City's Director of Human Relations, and sent a cc to every employee:

Melissa,

Over the past 15 years or so there have been numerous complaints to the city about the mold issues and the air quality leading to congestion, colds, migraines and general Employee health issues. The City has bleached mold off of the walls on numerous occasions, we have replaced walls and constantly battled moisture and there was testing and some type of mitigation some time possibly around 2009-2010 however the employees were not provided any information as to the results but air filtration units were purchased after the results.

We just recently moved filing cabinets in September in an office to reveal a wall full of mold which the city later bleached. Recent information confirms bleach does not kill mold on porous surfaces such as drywall, which has been the city's means of mold mitigation. It is my understanding that recent tests have shown the building contains asbestos as well as mildew/mold, my question/request is can you please look into employee exposure testing options for mold and asbestos exposure for all department personnel as soon as possible.

13. Rogers assisted Olbek in drafting the letter.

14. McHugh obtained the letter sent to Tuck. McHugh then told the police chief that Olbek's letter to Tuck was "personal" and he would make Olbek "pay" for sending the letter just before his wedding and honeymoon. McHugh demanded that the Chief discipline Olbek. The Chief advised McHugh that Olbek had behaved appropriately and not violated any city policies. McHugh informed the Chief that if he would not discipline Olbek he would find someone who would.

15. McHugh later told the Chief that he had enough commission support to terminate the Chief, or else he could resign.

16. On November 23, 2018, Olbek granted Captain Rogers permission to take samples from the walls and ceiling to be tested for mold and asbestos, since it appeared that the city had yet to do so. At the time, Rogers was one of the members of the police department staff granted access to the building to assist with the removal of evidence from the evidence locker and the removal of the 911 telecommunication system.

17. When McHugh learned that officers took the samples, he directed the Sheriff's office to launch an investigation into "felonies" committed by Rogers and the other officers in taking the samples. When Olbek learned that McHugh was planning to arrest the Captain, Olbek told the Chief that he had granted the Captain permission to take the samples.

18. On December 5, 2018, Joshua Bills, an attorney for the City of Wildwood, notified the Sumter County Sheriff's Department that he had discovered three rectangular holes in the drywall of the police building. On that same date, three officers of the Sumter County Sheriff's Department met Bills to conduct an inspection. Bills signed an intent to prosecute form and provided a sworn written statement. The Sheriff's Department assigned a case number (SCSO18OFF005938) and CAD Incident Number (SCSO18CAD106261).

19. On December 6-7, officers of the Sumter County Sheriff's Department conducted interviews with police department personnel. According to the Offense Report, a "confidential source" told the Sheriff's Department that Ashley Rogers had cut the holes in the drywall to have proof that the building had mold inside it.

20. On or about December 7, 2018, McHugh told the Chief that if Olbek and Rogers would retire, the City would drop any criminal charges. The Chief communicated this information to Olbek. The Chief also communicated to Rogers that several criminal charges would be levied against him, including criminal mischief and theft. Chief Valentino told Rogers that if Rogers resigned, the City would drop the charges and Rogers would be allowed to resign in good standing.

21. McHugh knew that there was no good faith basis for criminal charges. He was aware of the reason that Rogers removed the drywall. He was aware that, at the time of the alleged theft, the City was not using the building and intended to remove all of the drywall from the building. He knew that the dry wall samples taken by Rogers had no commercial value. McHugh threatened Olbek and Rogers with criminal prosecution solely to coerce them to resign in retaliation for their having exercised their first amendment rights.

22. On December 10, 2018, agents of the City advised the Sheriff's department that Olbek and Rogers had resigned from the City of Wildwood, and further advised that the City of Wildwood no longer wished to file charges in the case. The Department then closed the case.

23. The forced resignation of the plaintiffs was a matter of public concern. The public has an interest in the health and safety of public buildings built and maintained with taxpayer money. It also has an interest in the health and safety of the members of the police department and members of the public who regularly enter and exit the police building.

24. Between October 22, 2018 and mid-December 2018, news media covered the fire in the station, the discovery of mold in the station, and the forced resignations of the plaintiffs and the police chief.

25. Had Olbek and Rogers been terminated, they would not only have lost an income, and faced criminal prosecution, but would also have forfeited a pay-out of accrued sick and vacation leave, which Olbek and Rogers need to support their families.

26. Olbek and Rogers were enrolled in the Florida Retirement System pension plan. In the event of a criminal conviction for an alleged theft of City property, they would have forfeited their rights to an FRS pension. Due to their constructive discharge, Olbek and Rogers were forced to move their retirement funds from the FRS pension plan to the FRS investment plan, which resulted in a substantial reduction in the funds available to them at retirement.

27. The plaintiffs' forced terminations have resulted in a loss of income and benefits, and emotional distress.

28. The Defendant terminated Olbek and Rogers in retaliation for their exercise of rights protected under the first amendment.

29. The Plaintiffs have been obliged to retain counsel to vindicate their rights.

Wherefore, plaintiffs pray for reinstatement or front pay, back pay, lost benefits, restoration of their seniority, prejudgment interest, emotional distress and reasonable costs and attorney's fees.

## Count II

## Violation of Rights under the Florida Whistle-blower statute

30. Plaintiffs sue defendant under Florida's Whistle-blower Law, §112.3187, Florida Statutes for equitable relief and damages.

31. Pursuant to 28 U.S.C. 1367 (a), this court has supplemental jurisdiction over this claim because it is so related to Plaintiffs' first amendment claim as to form part of the same case or controversy under Article III of the Constitution.

32. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs two through twenty-seven.

33. The letter to the City from Olbek and Rogers alleged a violation or suspected violation of state, local laws, rules or regulations committed by employees or agents of an agency which create and present a substantial and specific danger to the public's health, safety or welfare. It also alleged an act or suspected act of gross mismanagement, malfeasance, and misfeasance, within the meaning of 112.3187 (5) (a) and (b).

34. They suffered an "adverse personnel action" within the meaning of 112.3187 (3) (c), Florida Statutes.

35. The Plaintiffs filed a grievance with the City of Wildwood pursuant to Section 2-81 of the City's ordinances, which provides the appointment of a grievance panel to hear whistle-blower disputes. After the filing of the grievance, the parties agreed that the City would not require plaintiffs to present their grievance before the panel, and, in any court action, the City would not allege that the plaintiffs had failed to exhaust their administrative remedies.

Wherefore, the Plaintiffs demand reinstatement to the same positions held before the adverse action, or equivalent positions, or reasonable front pay as alternative relief; reinstatement of full fringe benefits and seniority rights, as appropriate, and compensation for lost wages, benefits and other lost remuneration caused by the adverse action, and payment of reasonable costs, including attorney's fees.

EGAN, LEV, LINDSTROM & SIWICA, P.A.
P.O. Box 2231
Orlando, Florida 32801
407-422-1400

By: _____
Tobe Lev
Fla. Bar No. 226475